SEALED

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 16 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| THE EXTRADITION OF ) | Case No. 7:19mj51 |
| ) | |
| ROBERT KOVAČIĆ ) | |

COMPLAINT
(18 U.S.C. § 3184)

I, Anthony P. Giorno, Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to Bosnia and Herzegovina ("BiH").

2. There is an extradition treaty in force between the United States and BiH, as a successor state of Yugoslavia and the Kingdom of Serbia, the Treaty Between the United States and Servia for the Mutual Extradition of Fugitives from Justice, U.S.-Yugo., Oct. 25, 1901, 32 Stat. 1890 (the "Treaty").

3. Pursuant to the Treaty, the Government of BiH has submitted a formal request through diplomatic channels for the extradition of ROBERT KOVAČIĆ.

4. According to the information provided by the Government of BiH, KOVAČIĆ was charged with war crimes against civilians, in violation of Article 142(1) of the Criminal Code of the former Socialist Federative Republic of Yugoslavia.

5. These offenses were committed within the jurisdiction of BiH. A warrant for KOVAČIĆ's arrest was issued on June 6, 2014, by the Cantonal Court in Novi Travnik, BiH.

6. The warrant was issued on the basis of the following facts:

1

During the armed conflict in BiH, Victim 1, a Muslim Bosniak civilian, lived in an apartment in Jajce. In September 1995, Jajce came under the control of the "Croatian Defence Council" (hereinafter, "HVO," based on its spelling in Croatian). At that time, HVO soldiers came to Victim 1's apartment and ordered her to cook for and serve them, harassed her, insulted her nationality, and caused her to fear for her safety.

Approximately five or six days after HVO soldiers began coming to Victim 1's apartment, KOVAČIĆ, who was also a HVO soldier, came to her apartment. He was initially kind to her, and she prepared food for him and his dog. However, Victim 1 remained afraid of the other soldiers in her apartment and of the brutality in Jajce generally.

On September 19, 1995, Victim 1 asked KOVAČIĆ to help protect her, and he told her to go to his apartment in the building next door (where he was squatting). At KOVAČIĆ's apartment, Victim 1 asked if she could eat the food on the table. In response, KOVAČIĆ told her to drink some brandy, but she refused because she was on medication. KOVAČIĆ forced Victim 1 to drink some brandy anyway by pouring it down her throat. He then insulted her based on her nationality and threw her onto the bed. Even though she begged him not to touch her and to let her go, he roughly turned her over and over, and forcibly removed her clothing. When she tried to defend herself, he slapped her, took off his clothes, and then had sexual intercourse with her. KOVAČIĆ told Victim 1 that others would also rape her and then would kill her and throw her into the garbage and blame the Serbs for the murder. At one point, Victim 1 was able to grab some clothes and flee the apartment.

She spent the night in a burned-down house nearby. At dawn, Victim 1 went to the house of Lenka and Ljubez Miro, but was insulted by Lenka when she said she had been raped by KOVAČIĆ, a Croat. Victim 1 then went to the apartment of Hadžija Mesic and her mother

2

Vejsila Mešić. Their apartment was also occupied by Croat soldiers, and when Victim 1 told Hadžija she had been raped by a Croat, Hadžija asked her to leave because she was afraid of the soldiers. Before Victim 1 left, men came and demanded that she give them the key to her apartment, which she did. Victim 1 went to the police, but when she produced her ID card with her Muslim identity, the police officer just threw down her card, which she retrieved upon leaving the police station.

Victim 1 then saw Dubravka Majerić on the street, and asked her for help. Majerić took Victim 1 to her apartment, gave her some food, and allowed her to take a bath. The next day, Majerić took her to the hospital because her hands were bleeding. Although the doctor gave her something for her wounds, he did not otherwise examine her. Victim 1 stayed with Majeric for about four or five months; during this time, she gave a statement to Zvonko Jakešević, a police officer whom she knew before the war.

Immediately after the war ended, KOVAČIĆ left BiH, but before he did so, he threatened to "tear" Victim 1 again and to have a gang "finish" her.

7. KOVAČIĆ may be found within the jurisdiction of this Court at **** Avenue SW, Roanoke, VA 24015.

8. Tom Heinemann, Assistant Legal Adviser for the Office Law Enforcement and Intelligence in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is demanded are provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in BiH, in accordance with 18 U.S.C. § 3190, so as to enable them

3

to be received into evidence.

9. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from BiH, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1) are filed with this complaint and incorporated by reference herein.

10. KOVAČIĆ would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and BiH, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed. The undersigned further requests that the fugitive be held without bail pending resolution of the request for extradition.

_____
Anthony P. Giorno
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 16 day of May, 2019, at Roanoke, VA.

_____
United States Magistrate Judge

4