UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| THE EXTRADITION OF | ) | Case No. 7:19-MJ-51 |
| | ) | |
| ROBERT KOVAČIĆ | ) | |

**MEMORANDUM OF EXTRADITION LAW**
**AND REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS**

The United States, in fulfilling its treaty obligations to Bosnia and Herzegovina ("BiH"), respectfully requests that the fugitive in this case ROBERT KOVAČIĆ ("KOVAČIĆ" or "the fugitive") be held without bond pending the hearing on the certification of his extraditability pursuant to 18 U.S.C. §§ 3181 *et seq*. This memorandum summarizes the framework of extradition law in the United States, and sets forth the reasons why KOVAČIĆ should be detained. In short, KOVAČIĆ should be detained because he cannot overcome the strong presumption against bail in international extradition cases. Specifically, he cannot meet his burden of showing that he poses no risk of flight or danger to the community and that special circumstances exist warranting his release.

**BACKGROUND**

BiH seeks the extradition of KOVAČIĆ to stand trial on a charge of war crimes against civilians in violation of Article 142(1) of the Criminal Code of the former Socialist Federative Republic of Yugoslavia. The Cantonal Court in Novi Travnik, BiH, issued a warrant for his arrest on June 6, 2014 on the basis of facts more fully set forth in the Complaint, which facts are incorporated herein by reference.

BiH has requested that KOVAČIĆ be extradited pursuant to its extradition treaty with the

United States ("the Treaty").[1] The United States, in accordance with its obligations under the

Treaty and pursuant to 18 U.S.C. §§ 3181 *et seq.*, filed a complaint in this District seeking a

warrant for KOVAČIĆ's arrest. This court issued the arrest warrant, and KOVAČIĆ was

arrested on May 16, 2019. KOVAČIĆ is currently in the custody of the U.S. Marshals Service.

## ARGUMENT

## I. LEGAL FRAMEWORK OF EXTRADITION PROCEEDINGS

### A. The limited role of the Court in extradition proceedings

The extradition process is *sui generis*. Extradition is primarily an executive function with

a specially defined role for the Court, which is authorized by statute to hold a hearing to

determine whether to certify to the Secretary of State that the evidence provided by the

requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184. The Secretary of State,

and not the Court, then decides whether the fugitive should be surrendered to the requesting

country. 18 U.S.C. §§ 3184, 3186; *Plaster v. United States*, 720 F.2d 340, 354 (4th Cir. 1983).

"This bifurcated procedure reflects the fact that extradition proceedings contain legal issues

peculiarly suited for judicial resolution, such as questions of the standard of proof, competence

of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy,

which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103,

110 (1st Cir. 1997).

---

[1] *See* Treaty Between the United States and Servia (Serbia, as otherwise transliterated) for the Mutual Extradition of Fugitives from Justice, U.S.-Yugo., Oct. 25, 1901, 32 Stat. 1890.

At the extradition hearing, the Court's role is limited to considering the requesting country's evidence and determining whether the legal requirements for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case law—have been established. *See Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)) (analogizing extradition hearing to a preliminary hearing in a criminal case); *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). If the Court finds that the requirements for certification have been met, it must provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and must commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184 (following certification, the extradition judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made"); *see Ordinola v. Hackman*, 478 F.3d 588, 609 (4th Cir. 2007) (Traxler, J., concurring), *cert. denied*, 552 U.S. 947 (2007); *Cheung*, 213 F.3d at 88.

**B.      The requirements for certification**

The Court should certify to the Secretary of State that a fugitive is extraditable when the following requirements have been met: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge. *See* 18 U.S.C. § 3184; *Zhenli Ye Gon v. Holder*, 992 F. Supp. 2d 637, 644 (W.D. Va. 2014); *see also, e.g.*, *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008);

*Nezirovic v. Holt*, 990 F. Supp. 2d 606, 611 (W.D. Va. 2014).  The following sections briefly

discuss each of those requirements.

1.      Authority over the proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of

the United States, or any magistrate judge authorized so to do by a court of the United States, or

any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. As such,

the judicial officer conducting the extradition hearing prescribed by Section 3184 does not

exercise "any part of the judicial power of the United States," but rather acts in a "non-

institutional capacity by virtue of a special authority." *In re Extradition of Howard*, 996 F.2d

1320, 1325 (1st Cir. 1993) (internal quotation marks and citations omitted). Either a magistrate

judge or a district judge may render a certification under Section 3184. *See Austin v. Healey*, 5

F.3d 598, 601-02 (2d Cir. 1993); *see also Ordinola*, 478 F.3d at 597 ("a magistrate judge has

jurisdiction to review the evidence to determine whether an extradition request can be sustained

under a treaty").

2.      Jurisdiction over the fugitive

The Court has jurisdiction over a fugitive, such as KOVAČIĆ, who is found within its

jurisdictional boundaries. 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath,

charging any person found within his jurisdiction . . . issue his warrant for the apprehension of

the person so charged.").

3.      Treaty in full force and effect

Section 3184 provides for extradition in specifically defined situations, including

whenever a treaty or convention for extradition is in force between the United States and the

requesting state. *See id.*; *see also Hoxha v. Levi*, 465 F.3d 554, 562 (3d Cir. 2006); *Zhenli Ye Gon*, 992 F. Supp. 2d at 644. The government will satisfy this requirement at the extradition hearing by offering into evidence a declaration from an attorney in the Office of the Legal Adviser for the U.S. Department of State, attesting that there is a treaty in full force and effect between the United States and BiH. The Court should defer to the Department of State's determination in that regard. *See United States ex rel Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997) ("[O]n the question whether [the extradition] treaty has ever been terminated, governmental action in respect to it must be regarded as of controlling importance" (quoting *Terlinden v. Ames*, 184 U.S. 270, 285 (1902)); *Kastnerova v. United States*, 365 F.3d 980, 985-87 (11th Cir. 2004); *see also, e.g., In re Extradition of Mujagic*, 990 F. Supp. 2d 207, 217 (N.D.N.Y. 2013) ("since the dissolution of the former Yugoslavia, . . . the 1902 [Extradition] Treaty remains in full force and effect between the United States and BiH").

4.      Crimes covered by the treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty. Article I of the applicable treaty in this case provides for the return of fugitives charged with, or convicted of, an extraditable offense, as that term is defined under the Treaty.

Article II of the Treaty contains a list enumerating extraditable offenses, and specifically includes rape.  Art. II, ¶ 9. In assessing whether the crime for which extradition is requested is covered by the Treaty, the Court should examine the description of criminal conduct provided by BiH in support of its charge and decide whether that conduct constitutes an offense among those listed in Article II. *Factor v. Laubenheimer*, 290 U.S. 276, 299-300 (1933). An offense is

"extraditable," regardless of whether it is expressly designated on the Treaty's list, so long as the underlying conduct constitutes one of the enumerated offenses. *See, e.g.*, *id.*; *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (treaty that listed "murder" as extraditable encompassed offenses charged as "war crimes"). In determining whether the conduct constitutes an enumerated offense, "a narrow and restricted construction is to be avoided . . . [and] if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." *Factor*, 290 U.S. at 293-94.

In fulfilling its function under Section 3184, the Court should liberally construe the applicable extradition treaty in order to effectuate its purpose, namely, the surrender of fugitives to the requesting country. *Id.* at 298-300; *see also, e.g.*, *Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) (en banc) ("default rule" is that any ambiguity in extradition treaty must be construed in favor of "facilitat[ing] extradition"). Accordingly, because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers," *Grin v. Shine*, 187 U.S. 181, 184 (1902), the Court should "approach challenges to extradition with a view towards finding the offenses within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

Although not directly relevant to the issue of detention, the United States notes that there is no statute of limitations bar to the offense for which extradition is sought. Article VII of the treaty states that the applicable period of limitation is determined "according to the laws of the country to which the requisition is addressed." Therefore, we apply the law of the United States to identify the applicable statute of limitations.

6

Chapter 213 of Title 18 sets forth the limitations provisions that apply to federal crimes.

In pertinent part, 18 U.S.C. §3299 provides

Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation . . . for any felony under chapter 109A . . . .

18 U.S.C.A. § 3299 (West)

Chapter 109A of Title 18 covers "Sexual Abuse." Among other things, it criminalizes

aggravated sexual abuse which includes causing another person to engage in a sexual act by

using force against that person.  18 U.S.C. § 2241(a)(1).  A "sexual act" is defined by the statute

as

**(2) (A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

18 U.S.C.A. § 2246 (West).

Accordingly, there is no time limitation that may be asserted under the laws of the United

States to bar prosecution for the crime for which extradition is sought[2].

5.        Probable cause that the fugitive has committed the offense

To certify the evidence to the Secretary of State, the Court must conclude there is

probable cause to believe that the crime charged by BiH was committed by the person before the

Court. *Haxhiaj v. Hackman*, 528 F.3d 282, 285 (4th Cir. 2008). The evidence is sufficient, and

probable cause is established, if it would cause a "prudent man" to "believ[e] that the (suspect)

had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)

(internal quotation marks and citation omitted). The extradition judge's probable cause

---

[2] The United States reserves the right to assert other defenses to any claim that might be raised concerning the statute of limitations or other bars to prosecution in this case.

determination is "not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn*, 783 F.2d at 791 (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981)).

### C. An extradition hearing follows unique procedures

An extradition hearing is not a criminal proceeding. As detailed above, the purpose of an extradition hearing is to decide the sufficiency of each charge for which extradition is requested under the applicable extradition treaty; it is not to determine the guilt or innocence of the fugitive—that determination is reserved for the foreign court. *Collins v. Loisel*, 259 U.S. 309, 316 (1922); *Neely v. Henkel*, 180 U.S. 109, 123 (1901). Accordingly, "federal courts have developed various self-limiting principles that 'ensure, among other things, the judicial inquiry does not unnecessarily impinge upon executive prerogatives and expertise'" and "keep extradition courts within the bounds of the limited judicial inquiry set by statute." *Ordinola*, 478 F.3d at 607 (Traxler, J., concurring) (citation omitted). The limited nature of the hearing has thus resulted in special procedural and evidentiary rules.

The Federal Rules of Evidence do not apply to extradition proceedings. *See Haxhiaj*, 528 F.3d at 292; *see also* Fed. R. Evid. 1101(d)(3) ("These rules—except for those on privilege—do not apply to . . . miscellaneous proceedings such as extradition or rendition."). Indeed, hearsay evidence is admissible at an extradition hearing, and, moreover, a certification of extraditability is properly based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g.*, *Collins*, 259 U.S. at 317; *Haxhiaj*, 528 F.3d at 292; *Zhenli Ye Gon*, 992 F. Supp. 2d at 662-63 (collecting cases). Nothing more is required, and

typically nothing more is provided. *See, e.g.*, *Zanazanian v. United States*, 729 F.2d 624, 627-28 (9th Cir. 1984) (police report describing witness statements is competent evidence); *Skaftouros v. United States*, 667 F.3d 144, 155 n.16 (2d Cir. 2011) ("unsworn statements of absent witnesses may be considered"). Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing. Indeed, requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

The Federal Rules of Criminal Procedure also do not apply to extradition proceedings. *See Skaftouros*, 667 F.3d at 155 n.16; *see also* Fed. R. Crim. P. 1(a)(5)(A) ("Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive."). A fugitive has no right to discovery. *See Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991); *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976). Furthermore, many constitutional protections applicable in criminal cases do not apply. For example, a fugitive has no right to cross-examine witnesses who might testify at the hearing, *see Skaftouros*, 667 F.3d at 155 n.16; there is no Sixth Amendment right to a speedy trial, *see Jhirad*, 536 F.2d at 485 n.9; the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *see Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir. 1996) (citing *Collins v. Loisel*, 262 U.S. 426, 429 (1923)); the exclusionary rule is not applicable, *see Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and a fugitive does not have the right to confront his accusers, *see, e.g.*, *Bingham*, 241 U.S. at 517.

Relatedly, a fugitive's right to present evidence is severely constrained. A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting

9

country, but rather may only introduce evidence explaining the submitted evidence. *See Charlton*, 229 U.S. at 461-62; *Hoxha*, 465 at 561; *In re Extradition of Atuar*, 300 F. Supp. 2d 418, 427 (S.D. W. Va. 2003). A contrary rule "might compel the demanding government to produce all its evidence . . . both direct and rebutting, in order to meet the defense thus gathered from every quarter." *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)). The admission of explanatory evidence is largely within the discretion of the Court. *See Atuar*, 300 F. Supp. 2d at 427; *Koskotas*, 931 F.2d at 175.

In addition, courts routinely reject technical and affirmative defenses in extradition proceedings. *See, e.g.*, *Bingham*, 241 U.S. at 517 (rejecting objections to extradition that "savor of technicality"); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (noting that extradition court "properly may exclude evidence of alibi, or facts contradicting the government's proof, or of a defense such as insanity"). These issues, which require factual or credibility determinations, are reserved for the courts in the requesting country to resolve after the fugitive is extradited.

### D.     Rule of non-inquiry

All matters raised by the fugitive as a defense to extradition, other than those related to the requirements for certification, are to be considered by the Secretary of State, not by the Court. *See* 18 U.S.C. §§ 3184 & 3186. For example, the Secretary of State should address a fugitive's contentions that an extradition request is politically motivated, that the requesting state's justice system is unfair, or that extradition should be denied on humanitarian grounds. *See Mironescu v. Costner*, 480 F.3d 664, 666 (4th Cir. 2007) ("The broad range of options available to the Secretary includes (but is not limited to) reviewing de novo the judge's findings of fact and conclusions of law, refusing extradition on a number of discretionary grounds, including

humanitarian and foreign policy considerations, granting extraditing with conditions, and using diplomacy to obtain fair treatment for the fugitive."); *Atuar*, 300 F. Supp. 2d at 426 ("Humanitarian considerations are not within the province of the Court."); *Koskotas*, 931 F.2d at 173-74 (motives of requesting state is a matter for consideration by the executive branch); *Quinn*, 783 F.2d at 789-90 (noting that "the Secretary of State has sole discretion to determine whether a request for extradition should be denied because it is a subterfuge made for the purpose of punishing the accused for a political crime, or to refuse extradition on humanitarian grounds because of the procedures or treatment that await a surrendered fugitive") (citation omitted). This practice is consistent with the long-held understanding that the surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State." *See In re Kaine*, 55 U.S. 103, 110 (1852).

## II.    KOVAČIĆ SHOULD BE DETAINED

Just as extradition hearings follow unique procedures, the determination of whether to release a fugitive on bail is also *sui generis*. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 *et seq.*, do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not apply because, as explained above, an extradition proceeding is not a criminal case.[3] *See Collins*, 259 U.S. at 316; *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 597 (W.D. Va. 2013). Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are

---

[3] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, KOVAČIĆ is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with an offense committed in violation of the law of the requesting state, BiH.

absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

### A. Applicable law

      1.     <u>A strong presumption against bail governs in an international extradition proceeding</u>

Unlike in domestic criminal cases, there is a "powerful presumption against bail" in international extradition cases. *United States v. Zarate*, 492 F. Supp. 2d 514, 515 (D. Md. 2007) (citing *Wright v. Henkel*, 190 U.S. 40 (1903)). The Supreme Court established this presumption against bail in *Wright v. Henkel*, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. at 62.

The prudential reasons for this presumption against bail in international extradition cases are clear and compelling. When, as here, a requesting country meets the conditions of the treaty, the United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive. *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); *see also Wright*, 190 U.S. at 62. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be

defeated if a fugitive flees after being released on bond. *See In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future. And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

 2. Fugitives must be detained unless they establish "special circumstances" and also demonstrate that they are neither a flight risk nor a danger to the community

In light of the strong presumption against bail established in *Wright*, fugitives may not be released on bail unless they demonstrates that (1) they are neither a flight risk nor a danger to the community, *and* (2) "special circumstances" warrant their release. *See, e.g.*, *Leitner*, 784 F.2d at 160; *Nezirovic*, 990 F. Supp. 2d at 599-600 ("Under the special circumstances standard, admission to bail should be an unusual and extraordinary thing, and courts should exercise the power sparingly.") (internal quotation marks and citations omitted).[4] "This 'special circumstances' standard is much stricter than the 'reasonable assurance of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In re Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

---

[4] "[The fugitive] bears the burden of establishing the existence of special circumstances. Many courts, mindful of the presumption against bond in international extradition cases, have applied a clear and convincing evidence standard. A minority of cases employ the preponderance of the evidence standard. As the Fourth Circuit Court of Appeals has not spoken to the issue, the court will follow the majority rule and apply the clear and convincing evidence standard." *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 599 n.1 (W.D. Va. 2013) (internal citations omitted).

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense. *See, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1304; *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that a "well-educated and sophisticated" fugitive facing serious charges in foreign country had both the "incentive and ability to flee" and therefore presented a flight risk). Crucially, the special circumstances inquiry is separate from considerations of danger to the community or risk of flight. *See Leitner*, 784 F.2d at 160; *Nezirovic*, 990 F. Supp. 2d at 598 ("the extradite must also show that he will not flee or pose a danger to any other person or to the community"). "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance. *Leitner*, 784 F.2d at 161. Accordingly, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances. *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996) (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- The complexity of the pending litigation, *see, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996);

- The fugitive's need to consult with an attorney and/or participate in pending litigation, *see, e.g.*, *Smyth*, 976 F.2d at 1535-36;

- The fugitive's character, background, and/or ties to the community, *see, e.g.*, *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec.

19, 2017); *Beresford-Redman*, 753 F. Supp. 2d at 1089; *Matter of Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994);

- The fact that the fugitive may have been living openly, *see, e.g.*, *Leitner*, 784 F.2d at 160-61; *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, *see, e.g.*, *In re Extradition of Noeller*, 2017 WL 6462358, at *8-9; *Martinelli Berrocal*, 263 F. Supp. 3d at 1301-02; *In re Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see, e.g.*, *In re Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1072 (C.D. Cal. 2017); *In re Extradition of Knotek*, No. LA CV 13-9204 BRO (JCG), 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016); *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, *see, e.g.*, *Pelletier*, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, *see, e.g.*, *In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see, e.g.*, *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989); *Antonowicz*, 244 F. Supp. 3d at 1070; and

- The availability of bail for the same offense in the requesting country, *see, e.g.*, *Antonowicz*, 244 F. Supp. 3d at 1070; *Kyung Joon Kim*, 2004 WL 5782517, at *2; *Siegmund*, 887 F. Supp. at 1386-87.

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.      Analysis**

The Court should detain KOVAČIĆ without bond. As an initial matter, KOVAČIĆ is a

significant flight risk. The fact that KOVAČIĆ fled BiH and has evaded prosecution in his home

country is indicative of his risk of flight in the United States. *Cf. United States v. Botero*, 604 F.

Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a

substantial risk of flight, this Court does not find any meaningful distinction between a person

who left the country when he learned of pending charges and one who already outside the

country refuses to return to face these charges. The intent is the same—the avoidance of

prosecution.") (citing *Jhirad,* 536 F.2d at 483).

KOVAČIĆ also has a strong incentive to flee given that he faces a prison sentence of not

less than five years and up to twenty years if he is extradited and convicted in BiH.  Article 142 of

the Law on Criminal Procedures of the Federation of Bosnia and Herzegovina.  *See, e.g.*, *In re*

*Extradition of Shaw*, No. 14–MC–81475, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015) ("[T]he

Defendant is facing serious criminal sanctions in Thailand, which fact provides him with a strong

incentive to flee."); *In re Extradition of Adame*, Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682,

at *7-8 (S.D. Tex. Mar. 25, 2013) (the fugitive "has virtually no incentive to appear at his

extradition hearing, where, due to the Government's low burden of proof, there is a significant risk

that he will be formally extradited to Mexico. Hence, further flight from the United States to yet

another country or to an underground location in the United States is a reasonable assumption.")

KOVAČIĆ is also a danger to the community. The war crime of which KOVAČIĆ is

accused involved a violent rape, during which KOVAČIĆ forced his victim to drink liquor, pushed

her into a room and slapped her, tore off her clothing, forced her to have sexual intercourse with

him, and then threatened to kill her. Further, in September 2018, KOVAČIĆ was detained following what appeared to be an attempt to commit suicide by ingesting a large amount of over-the-counter medications.  Given the serious nature of the offense, the community would be at risk were he to be released. Allowance of bail in any amount would not guarantee KOVAČIĆ's presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.

KOVAČIĆ's risk of flight and danger to the community are each sufficient reasons for the Court to deny any forthcoming application for bail. However, even if the Court were satisfied that KOVAČIĆ is not a flight risk and poses no danger to the community here or abroad, the government is unaware of any "special circumstances" that would justify bail in this case. Indeed, as recently as April 2019, a magistrate judge in the U.S. District Court for the District of Utah issued an order reaffirming her decision to deny bail to a fugitive wanted in BiH for alleged war crimes committed in the mid-1990s. *See, e.g.*, Order Denying Defendant's Motion to Reconsider Court's Ruling On Detention, *United States v. Bilic*, No. 2:18-mj-00478-BCW, ECF 32 at 7 (D. Utah Apr. 12, 2019) ("Bilic has not established the existence of any special circumstances warranting his admission to bail and/or release pending his extradition hearing."); *see also, e.g.*, Order of Detention, *In re Extradition of Nezirovic*, No. 7:12-mc-39, ECF 10 at 2 (W.D. Va. July 23, 2012) ("the court finds that there are no special circumstances which would justify the release of the accused or the setting of terms of release" for fugitive wanted in BiH for war crimes allegedly committed in early 1990s).

Should, however, the Court be inclined to grant bail in this case, the United States respectfully requests that the Court submit special written findings as to those specific matters

that are found to constitute "special circumstances." Moreover, in order to protect the ability of

the United States to meet its treaty obligations to the Government of BiH, the government also

requests that the Court notify the parties within a reasonable amount of time in advance of any

contemplated release order.

## III.    CONCLUSION

For the foregoing reasons, the United States requests that KOVAČIĆ be detained pending

resolution of this extradition proceeding.


Respectfully submitted,

THOMAS T. CULLEN
United States Attorney


/s/ Anthony P. Giorno
Assistant United States Attorney
Virginia Bar No. 15830
United States Attorney's Office
Post Office Box 1709
Roanoke, Virginia 24008-1709
540-857-2250
540-857-2614
anthony.giorno@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings has been electronically filed by CM/ECF system which will send notification of such filing to all counsel of record on this 17th day of May, 2019.

s/Anthony P. Giorno
Assistant United States Attorney