UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

UNITED STATES OF AMERICA

     v.                                              Case No: 7:19mj51

ROBERT KOVACIC

## RESPONSE IN SUPPORT OF MOTION FOR BOND

Comes now the Defendant, Robert Kovacic, by counsel, and provides the following response to the government's memorandum of law with respect to the issue of bond. This Court should release Mr. Kovacic on bond, as he is not a flight risk or a danger to the community and special circumstances in this case support his release.

1. **Factual Background**

Mr. Kovacic is a 66 year old legal permanent resident, and has lived in the Roanoke area for more than twenty years. His wife and adult children, who were born in the United States, live here as well. He owns a house in joint tenancy with his wife, and although he and his wife have been separated for several years, they have not divorced, and he remains close to his children, especially his son.

Mr. Kovacic has not been able to work for a number of years due to disability, including an inner ear injury that has led to loss of hearing in one ear and impaired balance. He also had a hip replacement in February of this year, and suffers from high blood pressure. While incarcerated, he has suffered a skin reaction to either the soap or the water at the jail. Mr. Kovacic has extremely limited financial means and minimal criminal history.

2. **Applicable Law Regarding Bail in Extradition Proceedings**

1

The Court has inherent authority to grant bail in cases of foreign extradition when special circumstances that justify bail exist. *Wright v. Henkel*, 190 U.S. 40, 63 (1903). *See also In re Kapoor*, No. 11-M-456, 2012 WL 2374195, at *3 (E.D.N.Y. June 28, 2012) (collecting cases and finding "it is well-settled that although there is a presumption against granting bail in an international extradition case, an extraditee may be granted bail . . . upon a showing of special circumstances.") A request for bail in extradition proceedings should be evaluated using a preponderance of the evidence standard. *See In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n. 4 (C.D. Cal. 2006) (acknowledging disagreement among the courts but concluding that the preponderance of the evidence standard is more appropriate).

Courts considering bail in an extradition case "are not bound by an exhaustive list of 'special circumstances.'" *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1006 (D. Az. 2009). Rather, courts across the country have considered a variety of factors and, at least at the provisional release stage, have "view[ed] . . . articulated 'circumstances' collectively rather than singularly." *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 689 (N.D. Ill. 2002) (holding that extraditee established special circumstances sufficient to overcome presumption against bail even when no individual circumstance, on its own, would merit release). "Although most cases focus on a single special circumstance, courts are now recognizing that the cumulation of several factors may constitute special circumstances that justify bail pending extradition proceedings." *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 600 (W.D. Va. 2013).

Courts have found a wide range of special circumstances justify release on bail, either on their own or as part of a collective analysis. In addition, "the list of potential 'special circumstances' is not limited to those previously recognized in published decisions." *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999). Courts have found that

2

special circumstances justifying bail exist, *inter alia*, where the potential extraditee had a high probability of success in challenging extradition, *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 2003); where the potential extraditee suffers from health issues that are exacerbated by incarceration, *United States v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal. 1990); where the potential extraditee was involved in civil litigation that involved "all the fortune" of the prisoner and he needed to be able to prepare with counsel, *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (L. Hand, J.); where the potential extraditee had strong support in the local community, *Matter of Requested Extradition of Kirby*, 106 F.3d 855, 864-65 (9th Cir. 1996), *as amended* (Feb. 27, 1997); where the foreign government was pursuing extradition although the underlying documentation suggested the potential extraditee had been exonerated of the underlying crime, *United States v. Zarate*, 492 F. Supp. 2d 514, 515 (D. Md. 2007); and where the potential extraditee had no prior record and there was no allegation that he was a danger to any community, *United States v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal. 1990).

### 3. Lengthy Delay in Investigating and Requesting Extradition Is a "Special Circumstance"

One special circumstance that several courts have recognized is a lengthy delay between the alleged conduct at issue and the actual extradition request. The rationale behind a presumption against bail is that "extradition cases involve an overriding national interest in complying with treaty obligations." *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990). Hence, where there has been substantial delay between the investigation, charges, and extradition request, courts have recognized that the foreign power "has not made prosecution of this offense a priority," and there is a lack of diplomatic necessity for denying bail. *In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006). In *United States v. Ramnath*, 533 F. Supp. 2d 662 (E.D. Tx. 2008), the court considered the substantial delay in bringing charges (5

3

years) and seeking extradition (9 years), and inferred from the excessive delay that the case was weak. *Id.* at 680. Similarly, in *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 57-58 (D. Mass. 2010), the court recognized that the government of Peru's lack of urgency in pursuing charges against a potential extraditee undermined the argument that detention was diplomatically necessary and granting him bail. While the court recognized that "the Peruvian government was in turmoil for years following the events in question," which occurred some twenty years before the issuance of an order commencing the investigation in Peru, "there is no explanation for the three year delay" between the commencement of the investigation and the extradition request. *Id.* at 58. Finally, in *Wroclawski*, the court recognized that the eleven-year delay between when the petitioner was charged with bank fraud and theft in Poland and when the Polish government sought his extradition, constituted a special circumstance. 634 F. Supp. 2d at 1008.

Here, the documentation provided by the government demonstrates that there has been substantial delay in the investigation and arrest of Mr. Kovacic. He is alleged to have raped a woman in 1995, and the allegation was reported to the civil police soon after the alleged event. ECF 3, 3-2, at 7-8. Indeed, the documentation submitted by the government indicates that the events alleged were investigated in 1995. ECF 3-2 at 29, ECF. 3-2 at 14. Although not included in the documents provided, the alleged victim also stated that she gave a statement to the Bugojno police two years after the events in question. ECF 3-3 at 15. Nonetheless, it does not appear that BiH took any further action until 2008, when the alleged victim was reinterviewed. She was interviewed again in 2012, and again in 2014, but the government of BiH did not request extradition until 2015. ECF 3-1, at 4[1]. Here, as in *Castaneda-Castillo*, "the only

---

[1] The diplomatic note is dated January 13, 2014, but was stamped received by the U.S. State Department on January 20, 2015. Thus, either the note languished for approximately a year before it reached the U.S. government, or the 2014 date is a typo and it should read 2015. Given

4

conclusion which this court can reach is that [the foreign government] has 'not made prosecution of this offense a priority.'" 739 F. Supp. 2d at 58 (citing *Chapman*, 459 F. Supp. 2d at 1027).

The government's evidence that Mr. Kovacic engaged in a war crime, as opposed to an ordinary crime, is also tenuous. As Mr. Kovacic's appointed defender in BiH pointed out, the allegation of a war crime allowed the prosecution to avoid a statute of limitations problem, ECF 3-2 at 25, and that Mr. Kovacic is currently married to a Muslim Bosnian, thus making it unlikely that his alleged action against the victim was the result of anti-Muslim sentiment. *Id*. Nor does the alleged victim's initial and most contemporaneous statement, given in 1995, suggest that the alleged events had any nexus to her nationality. She only describes "Robert . . . the son of the gipsy woman Brigita," [sic] and does not allege that he is a Croatian, that he is in any army, or that he made any statements regarding her religion or nationality. ECF 3-2 at 14.

**4. Mr. Kovacic's Health Issues Also Contribute to "Special Circumstances"**

Courts have recognized that an extraditee's health issues, especially when exacerbated by incarceration, may form part of the special circumstances warranting bail. *See, e.g., Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) (noting that a serious deterioration in health while incarcerated could be a special circumstance); *Taitz*, 130 F.R.D. at 446 (considering the defendant's allergic reactions while in custody as a health factor supporting the finding of special circumstances).

Mr. Kovacic's health issues, including his recent hip replacement and impaired balance, support the existence of special circumstances in this case. It is also unclear at this point whether

---

that the note refers to documentation "properly certified at the United States Embassy in Sarajevo," and those documents date from later in 2014, it appears that the latter is the case, and the note was sent in 2015.

5

Mr. Kovacic is receiving all of his prescription medication. Counsel is in the process of obtaining further medical information, and requests leave to supplement this briefing should additional information become available.

**5. Mr. Kovacic Is Not a Flight Risk or a Danger to the Community**

Where the potential extraditee presents no risk of flight, a court may consider that as a factor supporting the existence of special circumstances. *Wroclawski*, 634 F. Supp. 2d at 1006. Contrary to the government's assertions, there is no indication that Mr. Kovacic fled or attempted to hide his whereabouts. The BiH prosecution was aware that he lived in Roanoke as early as 2014. ECF 4, at 26. The fact that he had a public Facebook page with pictures of himself in uniform indicates that he was not hiding his identity or location. *See* ECF 3-2, at 14.

His defender in BiH pointed out to the court there that the documentation before that court did not support the proposition that he left BiH immediately after the war, ECF 3-2 at 28, and the court noted only that he appeared to have left "soon after the war," *id.* at 29, a different proposition from the perspective of flight. It also does not appear that he was ever given the opportunity to appear voluntarily through a formal summons. ECF 3-2 at 25.

Mr. Kovacic has lived in the Roanoke area for more than 20 years, has raised his family here, and owns property here. Given his tenuous health, poor English skills, and straightened financial condition, he has neither the physical nor financial means to flee, and he has substantial ties to this community that indicate he is not a flight risk. The mere fact that he left Bosnia after the war, by all accounts a reasonable decision that many Bosnians and Croatians made, in no way indicates that he poses a risk of flight from his home in Roanoke. Because he is not a flight risk, his release on bail would also pose no problem for the government's compliance with its treaty obligations. *See Wroclawski,* 634 F. Supp. 2d at 1005-06 (recognizing that bond would not

6

interfere with the government's compliance with its treaty obligations where the government concedes that the defendant does not present a risk of flight).

Similarly, there is no indication that Mr. Kovacic is a danger to the community. After more than 20 years in the Roanoke area, he has minimal criminal history, and does not appear to have been incarcerated for any reason previously. Given his age and health, he poses no danger to the community.

**Conclusion**

For the foregoing reasons, as well as for those that may be presented to this Court at Mr. Kovacic's bond hearing, special circumstances exist warranting his release on bond in this case.

With respect to the arguments in the government's briefing regarding the underlying merits of the extradition proceeding, counsel requests leave to respond once an extradition hearing has been set and she had had the opportunity to obtain additional information regarding Mr. Kovacic and the relevant legal and factual issues in this case.

                                        Respectfully submitted,

                                        ROBERT KOVACIC

                                        By Counsel

                                        s/ Erin Trodden
                                        Erin Trodden
                                        Asst. Federal Public Defender
                                        VSB No. 71515
                                        116 N. Main St., Room 305
                                        Harrisonburg, VA 22802
                                        Tel: (434) 220-3396
                                        Erin_trodden@fd.org

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

                 s/ Erin Trodden