UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| THE EXTRADITION OF | ) | Case No. 7:19-MJ-51 |
| | ) | |
| ROBERT KOVAČIĆ | ) | |

## REPLY TO RESPONSE IN SUPPORT OF MOTION FOR BOND

ROBERT KOVAČIĆ was arrested on May 16, 2019 in accordance with an arrest warrant issued at the request of the government of Bosnia and Herzegovina ("BiH"), which seeks his extradition to stand trial on a charge of war crimes against civilians in violation of Article 142(1) of the Criminal Code of the former Socialist Federative Republic of Yugoslavia. KOVAČIĆ has filed a motion seeking bond pending completion of the extradition proceedings. ECF No. 18. The United States submits that KOVAČIĆ cannot overcome the strong presumption against bail in international extradition cases. Specifically, he cannot establish by clear and convincing evidence that he is neither a flight risk nor a danger to the community. Nor can he show "special circumstances" that would warrant his release. Accordingly, KOVAČIĆ should be detained pending completion of the extradition proceedings.

## KOVAČIĆ BEARS THE BURDEN OF PROVING BY CLEAR AND CONVINCING EVIDENCE THAT SPECIAL CIRCUMSTANCES SUPPORT HIS REQUEST FOR BOND

KOVAČIĆ recognizes the "well-settled" presumption against bail in an international extradition case," and asserts, correctly, that the presumption may be overcome by a showing that he is neither a risk of flight nor a danger to the community, and that special circumstances exist that are sufficient to justify his release. Relying on *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n. 4 (C.D. Cal. 2006), he further asserts that the existence of special circumstances is determined by a preponderance of the evidence standard. The United States disagrees and submits

that KOVAČIĆ's burden of proving the existence of special circumstances requires evidence that is "clear and convincing."

Although neither the Supreme Court nor the Fourth Circuit have specifically addressed the appropriate evidentiary standard, this court has adopted the majority approach and has determined that, as to special circumstances[1], the "clear and convincing evidence" standard should apply. *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 599-600 (W.D. Va. 2013). While some disagreement remains, those courts that have adopted a preponderance of the evidence standard have been deemed "a negligible minority." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 474–75 (S.D. Tex. 2010). Accordingly, the United States submits that KOVAČIĆ should be required to prove the factors entitling him to bond by evidence that is clear and convincing.

### KOVAČIĆ HAS NOT BORNE THE BURDEN OF PROVING ENTITLEMENT TO BAIL BY CLEAR AND CONVINCING EVIDENCE

KOVAČIĆ asserts that the facts of his case demonstrate that he is neither a flight risk nor a danger to the community. Further, he identifies two considerations that, in his view, constitute special circumstances and, collectively, justify his release on bond.

KOVAČIĆ's claims will be addressed *seriatim.*

Risk of Flight: Risk of flight is "not the criteria for release in an extradition case." *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989). Nor does a finding that a person facing extradition may not be a risk of flight obviate his further need to demonstrate the existence of

---

[1] There is no case law directly addressing the question of whether the clear and convincing standard applies to the risk of flight and danger to community components of bond in the extradition context. However, in concluding that it does, at least one court has analogized it to the standard for a person who is in custody pending a revocation hearing for a supervised release violation. *In re Extradition of Garcia,* 761 F.Supp.2d 468 n.10 (S.D. Tex. 2010).

special circumstances. Rather the absence of a defendant's risk of flight is more in the nature of a condition precedent to going forward with a determination of the existence of special circumstances that " 'could overcome the presumption against bail.' " *Matter of Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *4 (N.D. Ill. Dec. 19, 2017)(citing, *Garcia v. Benov*, 2009 WL 6498194 at *3 (C.D. Cal. 2009). Indeed, the courts have explained that the special circumstances test was established to allow for a limited number of cases to be eligible for bail because "any risk of flight is too significant a risk for the national interest to tolerate." *Garcia*, 761 F. Supp. 2d at 471.

KOVAČIĆ claims that he is not a risk of flight, as evidenced by his presence in the Roanoke area for more than twenty years and ownership of property here. His wife, from whom he has been estranged for several years, and two children who were born in the United States, also live here. He further suggests that his health issues, poor English skills and lack of financial resources would be significant impediments to flight.

The factors cited by KOVAČIĆ do not eliminate the risk that he will flee to avoid extradition. First, KOVAČIĆ is and has for several years been estranged from his family. There is no indication that he has any extended family in the Roanoke area. Second, he has no employment that would tie him to the Roanoke area. Third, he receives income from disability payments that are sufficient to enable him to live independently from his family. That income could also be used to facilitate flight. A number of large cities in the United States that are easily accessible to KOVAČIĆ are home to large Croatian communities in which he could be readily assimilated.[2]

---

[2] According to the 2005 U.S. census, there were 401,208 Americans of full or partial Croatian descent living in the United States. S0201. Selected Population Profile in the United States Archived

The serious nature of the charges pending against him in BiH, the significant penalties that attach[3], and the strength of the evidence against him are also factors that could encourage flight.

The circumstances under which KOVAČIĆ left BiH and his presence in the United States after he learned of the pendency of the charges in BiH also support a finding that he is a flight risk. He deems it significant that he did not leave BiH immediately after the war, but "soon after the war." Resp. In Supp. Of Motion for Bond, ECF No. 18 at *6. This is a distinction without a difference. According to his A-file, KOVAČIĆ entered the United States in December 1997 at Shreveport, Louisiana. He relocated to Roanoke in October 1998.

The courts in BiH have determined that he fled the country to avoid prosecution. In June 2014 at the request of the Cantonal Prosecutor, the Cantonal Courts in BiH conducted two hearings that addressed, among other things, the claim that KOVAČIĆ fled the country to avoid prosecution. ECF No. 3-2 at 23-26 (Decision of Cantonal Court Ordering Detention and Issuance of International Arrest Warrant); id. at 27-30 (Appellate Decision Affirming Order). KOVAČIĆ was represented by counsel at both hearings. The appellate panel found that

> The suspect (KOVAČIĆ) is in hiding since the file shows that the suspect was familiar with the fact that the victim reported the event to the police and that the suspect soon after the war was over, left Bosnia and Herzegovina, furthermore, the appeal does not offer even one proof that the suspect left BiH according to legal regulations, that is, to cancel his address and residence in order to move abroad. . . . Finally, if the suspect wishes to contradict the conclusion that he is hiding and avoids prosecution, he can do that by voluntarily approaching the BiH state authorities in charge of prosecution.

---

January 23, 2009, at the Wayback Machine, Population Group: Croatian (109-110), Data Set: 2005 American Community Survey, Survey: American Community Survey. That number has certainly grown. Large population centers are found in Detroit, Chicago and Pittsburgh. There is also a significant Croat population in Indianapolis that settled during the war in the 1990's.

[3] Conviction for this offense under Bosnian law is punishable by imprisonment for not less than five years or up to twenty years. ECF No. 3-3 at 3.

ECF No. 3-2 at 29.

The last sentence in the Cantonal Court's finding is important. In extradition matters, the law does not distinguish between those who flee a country to avoid prosecution and those who, knowing that they have been charged, nevertheless choose to remain absent from that country. The fact that KOVAČIĆ fled BiH and has evaded prosecution in his home country is indicative of his risk of flight in the United States. *Cf. United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.") (citing *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976)). The conclusion that KOVAČIĆ has fled to avoid prosecution in BiH is irrefutable.

Danger to the Community: Just as risk of flight is not a special circumstance warranting release, the same is true of any showing that a defendant is not a danger to the community. *Salerno,* 878 F.2d at 318; *Matter of Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986); *United States v. Smyth*, 795 F.Supp. 973, 976 (N.D. Cal. 1992). While KOVAČIĆ claims that he has only a "minimal" criminal history, the serious violent offense for which extradition is sought negates any claim that he is not a danger to the community. The Cantonal Courts certainly considered KOVAČIĆ a danger to the community, characterizing the offense as "especially aggravated and committed under special circumstances . . . ." ECF No. 3-2 at 29. Further, in an apparent attempt to harm himself in the fall of 2018, KOVAČIĆ ingested a substantial quantity of over-the-counter medications.

Finally, KOVAČIĆ argues that his later marriage to a Muslim woman casts doubt on the allegation that the rape is a war crime. Without citing any factual basis for his claim, he asserts that BiH may have characterized the offense as a war crime as a ruse to avoid the statute of limitations that would apply under Bosnian law. Resp. in Supp. of Mot. For Bond, ECF No.18, at *5. This same argument was made to the Cantonal Court, where it was rejected as a red herring.

> The fact that the suspect Robert Kovacic after the war got married to a Muslim, that is, a Bosniak, with whom he lives now, is not of relevance for existence of reasonable suspicion that the suspect committed the criminal offence of war crime he has been charged with, since the existence of reasonable suspicion that the criminal offence in question was committed is established according to the circumstances and facts which existed at the time the criminal offence was committed.
>
> ECF No. 3-2 at 26.

In summary, KOVAČIĆ has not borne the burden of proving either that he is not a flight risk or a danger to the community. Accordingly, this court need not reach the question of whether he has demonstrated the existence of special circumstances by evidence which is both clear and convincing. He should, therefore, remain detained pending conclusion of these extradition proceedings.

Assuming, arguendo, that KOVAČIĆ is able to clear the procedural hurdles of demonstrating that he is neither a flight risk nor a danger to the community, he still bears the heavy burden of proving special circumstances, which must be extraordinary and not merely applicable to all defendants facing extradition. *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992); *In re Extradition of Mainero*, 950 F.Supp. 290, 294 (S.D. Cal. 1996); *Matter of Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *4 (N.D. Ill. Dec. 19, 2017).

KOVAČIĆ offers two factors as special circumstances, namely, "lengthy delay in investigating and requesting extradition" by the government of BiH and "Mr. KOVAČIĆ's health issues." The record does not support either of his contentions.

The period of delay in this case is not a special circumstance supporting his application for bond. In fact, the case has progressed well given the extraordinary circumstances that existed and continue to exist in BiH since the war. The "aggravated crime" was committed on September 19, 1995, "during the war and armed conflict" that was then ravaging BiH. ECF No. 3-2 at 22. It must be remembered that the Criminal Code of BiH did not take effect until March 2003, and the Bosnian Judiciary did not adopt a war crimes strategy until 2008. It is logical to assume that investigations were interrupted between the time the war ended and that date. Further, the victim's case was one of many that arose in the aftermath of the war. According to amendments to the country's war crimes strategy, which were drafted in 2018, the state prosecution has more than 550 unresolved war crimes cases in which more than 4,500 perpetrators have been identified, and as many cases again with unknown perpetrators. https://balkaninsight.com/2019/05/15/bosnian-prosecutions-slowdown-on-war-indictments. The inability of BiH judiciary to break the logjam of cases should not be construed as an indication that this case is not a priority for prosecution.

The victim reported the rape to police officials in Jajce on October 3, 1995. Id. at 9. She was re-interviewed on September 16, 2008 and, with her witnesses, again interviewed on March 15, 2012. Id. The Cantonal Prosecutor ordered a formal investigation on January 9, 2013. Id. at 18. On June 2, 2014, after learning that KOVAČIĆ was living in the United States, he filed a motion for detention and sought the issuance of an international arrest warrant. Id. at 6, 20-21.

His request was granted by the Cantonal Court on June 6, 2014 following a hearing during which KOVAČIĆ was represented by counsel. Id. at 23-26. That decision was affirmed on June 30, 2014. Id. at 27-30. The arrest warrant was issued on July 4, 2014. KOVAČIĆ was formally identified by the victim on November 17, 2014 and the extradition request was made to the United States on December 1, 2014. It is apparent that any delay by authorities in BiH may not be attributed to a failure on their part to make prosecution of this offense a priority, as claimed by KOVAČIĆ.

KOVAČIĆ's medical condition is not a special circumstance supporting his application for bond. To avoid incarceration in a case like this, a medical condition must be so serious that "no constitutionally acceptable treatment can be provided" in prison. *In re Extradition of Rouvier*, 839 F.Supp. 537, 541-42 (N.D. Ill. 1993); *In re Extradition of Breyer*, 32 F.Supp.3d 574, 593 (E.D. Pa. 2014); *Extradition of Hamilton–Byrne*, 831 F.Supp. 287, 291 (S.D.N.Y. 1993). *Cf. In re Rouvier*, 839 F.Supp. at 542 (serious heart condition not special circumstance that could not be controlled with medication); *In re Extradition of Garcia,* 761 F.Supp.2d at 481-82 (danger of losing movement in leg following back surgery not life-threatening or so complex as to be beyond capacity of federal authorities to manage while in custody). That is not the case here, and KOVAČIĆ has offered no proof that his physical issues, which are not uncommon in a man his age, cannot be treated in the setting of the Western Virginia Regional Jail.

## CONCLUSION

For the foregoing reasons, the United States renews its request that KOVAČIĆ be detained pending resolution of this extradition proceeding.

Dated: June 11, 2019                Respectfully submitted,

                                    THOMAS T. CULLEN
                                    United States Attorney

                        By:         */s/ Anthony P. Giorno*
                                    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply to Response in Support of Motion for Bond has been electronically filed by CM/ECF system which will send notification of such filing to all counsel of record on this 11th day of June, 2019.

                                    */s/ Anthony P. Giorno*
                                    Assistant United States Attorney